IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JP MORGAN SECURITIES LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 16-CV-584-GKF-FHM ) |
| LAURISA ANDERSON, and STEVEN REMCHUK, | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Before the court is the Motion for Order to Show Cause [Doc. No. 10] of plaintiff JP Morgan Securities, LLC ("JP Morgan"). Specifically, JP Morgan requests defendant Laurisa Anderson be held in civil contempt of court. For the reasons set forth below, the motion is granted in part and denied in part.

**I. Procedural Background**

This dispute arises from the allegedly unlawful solicitation of JP Morgan clients by Laurisa Anderson and Steven Remchuk on behalf of Wells Fargo. *See generally* [Doc. No. 3]. JP Morgan's claims—breach of contract, misappropriation of trade secrets, breach of fiduciary duty, tortious interference, unjust enrichment, conspiracy, and conversion—are now the subject of a pending arbitration before the Financial Industry Regulatory Authority ("FINRA"). [Doc. No. 2, pp. 1, 13–19, ¶¶ 1, 50–92]; [Doc. No. 17, p. 11]. To aid in that proceeding, the parties requested and received a temporary preliminary injunction on September 15, 2016. [Doc. No. 9]. Among other things, the injunction required defendants to return all documents and records pertaining to JP Morgan's customers, employees, and business within twenty-four (24) hours; it

1

also prohibited the destruction of documents, records, and information related to the lawsuit. [*Id.* at 2]. JP Morgan now argues that Ms. Anderson violated the terms of that order.

## II. Legal Standard

A district court enjoys broad discretion in using its contempt power to enforce its orders. *See Ross v. Univ. of Tulsa*, 14-CV-484-TCK-PJC, –F. Supp. 3d–, 2016 WL 6839459, at *6 (N.D. Okla. Nov. 21, 2016). Generally, civil contempt sanctions serve two purposes: (1) to coerce compliance with a court order; and (2) to compensate a litigating party for an adversary's noncompliance. *See O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992). Noncompliance must be proven by clear and convincing evidence. *FTC v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004).

## III. Analysis

FINRA generally requires that a dispute be arbitrated if it "arises out of the business activities of" a member and/or associated persons. FINRA, Rule 13200 (2008). That arbitral forum is exclusive and is governed by pleading, discovery, evidentiary, and other rules set out in FINRA's Code of Arbitration Procedure. *See* FINRA, Rule 13200 *et seq.*; [Doc. No. 8, p. 1, ¶ 2]. A party may, however, seek temporary injunctive relief from a court "until an arbitration panel can be assembled." *See Prudential Ins. Co. of Am. v. Hosto*, No. 08-CV-674-MJR-CJP, 2008 WL 4482882, at *2 n.1 (S.D. Ill. Oct. 2, 2008); FINRA, Rule 13804(a). The scope of such relief is limited and "simply preserves the status quo until arbitration is commenced." *See PFS Inv., Inc. v. Imhoff*, No. 11-10142, 2011 WL 1135538, at *7 (E.D. Mich. Mar. 25, 2011). That is confirmed by the fact that an applicant for temporary relief must simultaneously submit his claim to arbitration. *See id.*; FINRA, Rule 13804(b).

Here, a preliminary injunction issued on September 15, 2016, in connection with JP Morgan's allegations that defendants violated their employment agreement. [Doc. No. 9]. Among other things, it required defendants to return to JP Morgan all documents and records—in whatever form—"pertaining to JP Morgan's customers, employees and business, within 24 hours" and prohibited the destruction of such material. [*Id.* at 2]. There is no question that Ms. Anderson failed to comply with the precise terms of the court's injunction. *See* [Doc. No. 11-3, p. 2]; [Doc. No. 11, pp. 11–12] (acknowledging noncompliance). But the scope, intent, and consequence of that noncompliance are disputed. For the reasons set forth below, the court finds that an award of attorney fees is appropriate but a forensic review of electronic devices is not.

*First*, Ms. Anderson violated the court's order. As noted above, Ms. Anderson concedes she failed to return all customer and business related documents to JP Morgan within twenty-four (24) hours of the September 15, 2016 injunction. *See* [Doc. No. 11-3, p. 2]; [Doc. No. 11, pp. 11–12]. She also destroyed digital copies of those documents after transmitting them to her attorney. [Doc. No. 11-2, pp. 2–3, ¶¶ 8–9]. But Ms. Anderson argues that any alleged noncompliance was limited—to forty-three (43) pages of documents—and understandable, if incorrect. Specifically, Ms. Anderson explains she retained the documents in connection with a contemplated employment discrimination claim. [Doc. No. 17-1, pp. 2–3, ¶¶ 8–19]. Of course, no such retention was permitted by the court's order, nor did Ms. Anderson seek an exception to allow retention of documents on that basis. In any event, "a finding of willfulness is not required to award attorney fees in a civil contempt proceeding." *See John Zink Co. v. Zink*, 241 F.3d 1256, 1262 (10th Cir. 2001).[1] JP Morgan spent time and resources determining the scope of Ms.

---

[1] Ms. Anderson cites an unpublished order and judgment—*United States v. Mercado*, 165 Fed. App'x 641, 642–43 (10th Cir. 2006)—for the proposition that non-willful or inadvertent violations of a court order need not give rise to civil contempt sanction. *See* [Doc. No. 17, p.

3

Anderson's violation of the temporary injunction and litigating this motion. [Doc. No. 11]; [Doc. No. 11-3]; [Doc. No. 11-5]. Accordingly, an award of fees is appropriate. *See O'Connor*, 972 F.2d at 1211 (identifying compensation of a litigating adversary as a remedial purpose of sanctions for civil contempt).

A forensic review of electronic devices, however, is not. To start, such a coercive sanction could only be justified by a *continuing* violation of the court's order. *See O'Connor*, 972 F.2d at 1211. JP Morgan makes no such showing here. Indeed, in its papers, JP Morgan argues that "it is not clear" whether all covered documents "have been deleted," [Doc. No. 11, p. 6–7], and speculates that "there may be copies" on Ms. Anderson's personal devices, [*id.* at 6]. The court notes that Ms. Anderson brought herself into voluntary compliance with the court's order and supplies forensic verification from Wells Fargo to that effect, though that is likely cold comfort to JP Morgan given its allegations. *See* [Doc. No. 17-2].[2] In any event, the court finds that JP Morgan has not proven a continuing violation of the September 15, 2016 injunction by clear and convincing evidence.

More fundamentally, the scope of requested forensic relief is incommensurate with the limited role of temporary injunctions in the FINRA arbitration scheme. *See Hosto*, 2008 WL 4482882, at *2 n.1; *Imhoff*, 2011 WL 1135538, at *7. In truth, ordering forensic electronic

---

12]. The court is unpersuaded. For one thing, "[u]npublished opinions are not precedential" and are cited only "for their persuasive value." *See* 10th Cir. R. 32.1(A). Indeed, *Mercado* itself notes that "the citation of orders and judgments" is "disfavored." *See Mercado*, 165 Fed. App'x at 641 n. For another, *Mercado* is flatly contradicted by published Tenth Circuit precedent, which notes and adopts the majority rule from circuit courts of appeals—namely, that a finding of civil contempt does not require a showing of willfulness. *See Zink*, 241 F.3d at 1261–62; *Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, --F. Supp. 3d--, 2016 WL 6839459, at *6 (N.D. Okla. Nov. 21, 2016)

[2] The court recognizes that Ms. Anderson has provided JP Morgan with differing accounts of when the files were deleted. *Compare* [Doc. No. 11-2; Doc. No. 11-3] *with* [Doc. 17-1]. However, Wells Fargo's forensic examination confirms that all relevant files have been deleted and are no longer accessible. [Doc. No. 17-2, p. 3, ¶¶ 14–16].

review—and policing compliance with that mandate and the court's September 15, 2016 order—would effectively transform this court into a discovery adjunct for the arbitral panel. The court declines that invitation. JP Morgan may seek expanded discovery from the FINRA panel if it sees fit. And in any case, the allegations that are the subject of this motion—Ms. Anderson's improper removal, retention, and use of JP Morgan customer information—are the subject of pending FINRA proceedings. [Doc. No. 2, p. 1, ¶ 1]; [Doc. No. 17, p. 11]. Thus, "[a]ny damages that [JP Morgan] may have suffered" "both before and after issuance of the" preliminary injunction order "are available for recovery . . . in the FINRA arbitration proceedings." *See Morgan Stanley & Co. Inc. v. Choy*, No. 08-467 HG KSC, 2009 WL 330210, at *4 (D. Haw. Feb. 10, 2009). JP Morgan "will be able to advance . . . the same arguments it has presented to this [c]ourt" to FINRA as to why it should receive permanent injunctive relief. *See Suntrust Inv. Servs., Inc. v. Wachovia Secs., LLC*, No. 8:08-cv-852-T-26TGW, 2008 WL 2074395, at *1 (M.D. Fla. May 15, 2008). "It makes very little sense from the perspective of preserving client and judicial resources to continue to litigate" this matter before this court when "the key issue of whether [JP Morgan] is entitled to permanent injunctive relief will [soon] be decided by a panel of arbitrators." *See id.*

WHEREFORE, plaintiff JP Morgan's Motion for an Order to Show Cause [Doc. No. 10] is granted in part, as to attorneys' fees and costs, and denied in part, as to a forensic examination and request for hearing.

IT IS SO ORDERED this 21st day of March, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT